[Cite as *State v. White*, 2017-Ohio-6984.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 105430**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JERMEAL WHITE

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-581732-A

**BEFORE:** Celebrezze, J., E.T. Gallagher, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** July 27, 2017

**FOR APPELLANT**

Jermeal White, pro se
Inmate No. 654-040
Trumbull Correctional Institution
P.O. Box 901
Leavittsburg, Ohio 44430


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY:    Anthony Thomas Miranda
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., J.:

**{¶1}** Defendant-appellant, Jermeal White ("White"), brings this appeal challenging the trial court's judgment denying his motion for a new trial. Specifically, White argues that the trial court erred by denying his motion for a new trial and failing to hold an evidentiary hearing on the motion. After a thorough review of the record and law, we affirm.

## I. Factual and Procedural History

**{¶2}** In May 2014, White was convicted of aggravated murder, murder, aggravated burglary, felonious assault, and kidnapping. The following relevant facts were presented at a bench trial.

**{¶3}** On December 22, 2012, Don'Tel Sheeley ("victim"), was shot and killed in a house on East 99th Street in Cleveland, Ohio. Several witnesses testified that two men, armed with handguns, entered the house and attempted to steal marijuana from the victim. During the course of this robbery, the victim was shot three times.

**{¶4}** One of White's codefendants, Richard Harris ("Harris"), testified against White at trial in exchange for a plea agreement.[1]

> According to Harris, he, [White], and [codefendant] Lateef Taylor planned to rob [the victim] of marijuana. The three got a ride from Ashaka Johnson from the west side of Cleveland to the east side, near [the victim's] house. Taylor, a friend of the [victim's] family, then went inside the house

---

[1] Under the plea agreement, Harris received a sentence of life in prison with parole eligibility after 18 years.

to purchase some marijuana from [the victim]. He informed [White] and Harris of the situation in the house, including that [the victim] had a firearm on or near his person. Harris and [White] then went to the house, knocked on the side door, and forced their way through once it began to open.

Harris testified that he entered into a kitchen where he attempted to hold several occupants there at gunpoint while [White] ran to the front of the house where Taylor had told them [the victim] was located.

*State v. White*, 8th Dist. Cuyahoga No. 101576, 2015-Ohio-2387, ¶ 4-5.

**{¶5}** A witness who was sitting next to the victim in the living room testified that the victim had a handgun in his lap. She testified that a man wearing a partial mask and carrying a gun entered the living room. She asserted that she hid behind the television and heard a number of shots fired. Harris testified that he was in the kitchen when shots were fired. He ran out of the house followed by [White]. They then met up with Taylor. Harris asked [White] what happened, and Harris testified that [White] said that [the victim] reached for a gun so [White] shot him. According to Harris, the three got a ride from [Ashaka] Johnson back to the apartment where [White] was staying.

*Id*. at ¶ 9.

**{¶6}** None of the occupants of the house identified White as one of the intruders on the night of the shooting. However, a few days after the shooting, two of the occupants who were inside the house when the incident occurred told the investigating officers that White was one of the intruders. Kimmetta Sheeley, the victim's mother, testified that she had known White since he was nine years old and that she recognized White as one of the intruders based on facial tattoos, his nose, other facial characteristics, and his voice. Mack Miller testified that one of the intruders had a smile that looked familiar to and resembled White's smile.

**{¶7}** Three bullets were recovered from the victim's body. It was determined that

the bullets were fired by a .40 caliber handgun. Harris testified that he and White made arrangements to sell the murder weapon to Darrell Davis. Davis testified that he purchased the gun from Harris and White.

{¶8} At the close of trial, the trial court found White guilty of all charges. The trial court imposed an aggregate prison sentence of 28 years to life.

{¶9} In June 2014, White filed a direct appeal challenging his convictions and the trial court's sentence. *White*, 8th Dist. Cuyahoga No. 101576, 2015-Ohio-2387. This court affirmed White's convictions and the trial court's sentence, but remanded the matter to the trial court for the limited purpose of issuing a nunc pro tunc journal entry to correct inaccuracies in the court's journal entry of sentence. *Id.* at ¶ 69.

{¶10} On December 7, 2016, White filed a motion for leave to file a motion for a new trial and a motion for a new trial based on newly discovered evidence. Specifically, in support of his motions, White submitted the affidavit of Devon Johnson. Johnson averred that White "had nothing to do with [the victim] getting killed." Johnson asserted that his cousin, codefendant Harris, told him that Harris and Harris's friend, who was not White, went into the victim's house and that Harris shot the victim. Johnson further averred that he and Harris sold the murder weapon to Davis. In sum, Johnson's affidavit alleged that White was not present at the time of the shooting nor the subsequent gun sale.

{¶11} On December 28, 2016, the trial court granted White's motion for leave. However, on January 20, 2017, the trial court denied White's motion for a new trial

without a hearing.    It is from this judgment that White appeals.

{¶12} White assigns two errors for review:

I. The trial court erred in denying [White's] motion for new trial, in violation of his due process rights under the U.S. and Ohio Constitutions.

II. The trial court erred in not holding a hearing on [White's] motion for new trial, in violation of his due process rights under the U.S. and Ohio Constitutions.

## II. Law and Analysis

### A. Motion for New Trial

{¶13} In his first assignment of error, White argues that the trial court erred by denying his motion for a new trial.

{¶14} Crim.R. 33 governs motions for a new trial.   Crim.R. 33(A)(6) provides that a motion for a new trial on the ground of newly discovered evidence may be granted only if that evidence:

(1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence.

*State v. Cannon*, 8th Dist. Cuyahoga No. 103298, 2016-Ohio-3173, ¶ 15, citing *State v. Petro*, 148 Ohio St. 505, 76 N.E.2d 370 (1947), syllabus.

{¶15} "A Crim.R. 33 motion for a new trial is addressed to the sound discretion of the trial court and will not be reversed absent an abuse of discretion."   *State v. Allen*, 8th Dist. Cuyahoga No. 103492, 2016-Ohio-7045, ¶ 8, citing *State v. Schiebel*, 55 Ohio St.3d 71, 77, 564 N.E.2d 54 (1990).   An abuse of discretion implies the trial court's attitude

was unreasable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶16} When reviewing motions for a new trial, a trial court may weigh the credibility of affidavits submitted in support of the motion in determining whether to accept the affidavit as true statements of fact. *State v. Taylor*, 8th Dist. Cuyahoga No. 88020, 2007-Ohio-825, ¶ 15, citing *State v. Coleman*, 2d Dist. Clark Nos. 04CA43 and 04CA44, 2005-Ohio-3874. *Accord State v. Williams*, 8th Dist. Cuyahoga No. 103257, 2016-Ohio-5403, ¶ 42.

{¶17} In the instant matter, White filed his motion for a new trial based on newly discovered evidence. Specifically, he argued that he was entitled to a new trial based on Johnson's affidavit. As noted above, Johnson averred in his affidavit that White had no involvement in the home invasion, shooting, or subsequent gun sale.

{¶18} In the trial court's January 20, 2017 judgment entry and opinion denying White's motion for a new trial, the court concluded, in relevant part:

> Although it is questionable whether the new evidence [White] relies upon in his motion for a new trial meets any of the requirements set forth in *Petro*, it is clear that it cannot satisfy the last two. [White's] new evidence that he was not present when [the victim] was shot is contradicted by the evidence at trial. This was a bench trial with 33 witnesses testifying on behalf of the state of Ohio. Four of those witnesses placed [White] on scene at the time of the murder: Richard Harris, Lateef Taylor, Ashaka Johnson, and Kimmetta Sheeley. In addition, the state offered evidence of cell phone calls to and from [White's] phone establishing that he was in the area of E. 99th Street in Cleveland, at the approximate time of the murder.
> Johnson's affidavit contains hearsay statements of [Harris] which are

directly contradicted by Harris' own testimony at trial. * * * Johnson's affidavit merely contradicts the evidence of White's participation in the murder. Evidence that the court found links White to the crime. As it merely impeaches or contradicts evidence placing [White] at the scene of the crime, Johnson's affidavit does not warrant a new trial on the basis of newly discovered evidence.

The facts reported in Johnson's affidavit are also cumulative to former evidence. The affidavit repeats facts established at trial, but with a pro-defendant twist designed to exculpate White from any involvement with the crime. This is accomplished through the use of convenient, non-specific recollection of times, dates and names. * * *.

The court finds the affidavit in support of [White's] motion for a new trial lacking in credibility. In assessing the credibility of affidavit testimony in so-called paper hearings, the trial court should consider all relevant factors including: (1) whether the judge reviewing the post-conviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial. Moreover, a trial court may find sworn testimony in an affidavit to be contradicted by evidence in the record by the same witness, or to be internally inconsistent, thereby weakening the credibility of that testimony. *State v. Calhoun*, 86 Ohio St.3d 279, 285, [714 N.E.2d 905] (1999).

As previously stated, this was a bench trial involving this same court. There is only one affidavit to consider and that consists mainly of hearsay. Although the affiant is not a relative of [White], he is a convicted felon housed in the same institution as [White]. Finally, the statements contained in the affidavit are directly contradicted by the testimony and exhibits presented at trial. The statements are notably vague, and the highlighting of [White's] absence at critical times in the narrative is suspect.

{¶19} White directs this court to *State v. Quinn*, 2d Dist. Clark No. 2014-CA-95, 2016-Ohio-140, for the proposition that the first *Petro* factor should be given more weight than the fifth and sixth factors because any new evidence supporting a motion for

a new trial is likely to impeach or contradict former evidence.   There, the appellate court explained,

> "[w]hile *Petro* stands for the proposition that newly discovered evidence that merely impeaches or contradicts other evidence is not enough for a new trial, we do not read *Petro* as establishing a per se rule excluding newly discovered evidence as a basis for a new trial simply because that evidence is in the nature of impeaching or contradicting evidence.   The test is whether the newly discovered evidence would create a strong probability of a different result at trial, or whether it is merely impeaching or contradicting evidence that is insufficient to create a strong probability of a different result."

*Id.* at ¶ 14, quoting *Dayton v. Martin*, 43 Ohio App.3d 87, 90, 539 N.E.2d 646 (2d Dist.1987).

{¶20} Although the trial court concluded that Johnson's affidavit failed to satisfy the fifth and sixth *Petro* factors, a review of the record reflects that the newly discovered evidence also fails to meet the first *Petro* factor, which states that a new trial may be granted only if the newly discovered evidence "discloses a strong probability that it will change the result if a new trial is granted."   *Petro*, 140 Ohio St. 505, 76 N.E.2d 370, at syllabus.   Johnson was not an eyewitness to the murder and had no independent information about the incident.   Rather, everything that Johnson asserts in his affidavit about the murder is what Harris allegedly told him.   The record is devoid of any affidavit from Harris suggesting or implying that he falsely testified nor that he recanted his trial testimony.

{¶21} The state presented evidence at trial that (1) White and Harris forced their way into the victim's house intending to rob the victim of marijuana, (2) either White or

Harris shot the victim while inside, and (3) White and Harris subsequently sold the murder weapon to Davis. As this court noted on direct appeal, the evidence linking White to the shooting was "overwhelming." *White*, 8th Dist. Cuyahoga No. 101576, 2015-Ohio-2387, at ¶ 23.

{¶22} Several witnesses who testified at trial, including Harris, Sheeley, Taylor, and Ashaka Johnson, placed White either inside the victim's house or at or near the victim's house when the murder took place. White's cell phone records, which were presented at trial, indicated that he was in the area of the victim's house at the approximate time that the shooting occurred. Furthermore, Harris's and Davis's trial testimony both place White at the subsequent sale of the murder weapon.

{¶23} Johnson's affidavit merely impeaches and/or contradicts the testimony of Harris, Taylor, Kimmetta Sheeley, Ashaka Johnson, and Davis. Furthermore, Johnson's affidavit merely contradicts White's cell phone records. The sworn testimony in Johnson's affidavit is contradicted by the testimony of eyewitnesses who observed not only that White was with Harris and in the area of the victim's house, but also that White was inside the victim's house when the shooting occurred.

{¶24} Pursuant to *Petro*, evidence that merely contradicts former evidence is not sufficient under Crim.R. 33(A)(6). "Evidence that merely impeaches or contradicts evidence in the former trial is insufficient to support a motion for a new trial." *State v. Howard*, 8th Dist. Cuyahoga No. 101359, 2015-Ohio-2854, ¶ 54, citing *Petro,* 140 Ohio St. at 509, 76 N.E.2d 370.

**{¶25}** For all of these reasons, we find that the newly discovered evidence contradicts evidence at trial. Furthermore, in light of the direct and circumstantial evidence linking White to the murder, there is not a strong probability that the new evidence will change the result if a new trial is granted. Accordingly, the trial court did not abuse its discretion in denying White's motion for a new trial.

**{¶26}** White's first assignment of error is overruled.

### B. Evidentiary Hearing

**{¶27}** In his second assignment of error, White argues that the trial court erred by denying his motion for a new trial without holding an evidentiary hearing.

**{¶28}** Crim.R. 33 does not require a hearing on a motion for a new trial. *State v. Conner*, 8th Dist. Cuyahoga No. 103092, 2016-Ohio-301, ¶ 23. "To warrant a hearing, the newly discovered evidence must present a strong possibility that a new trial might reach a different result." *State v. Sailor*, 8th Dist. Cuyahoga No. 100009, 2014-Ohio-1062, ¶ 16, citing *State v. Williams*, 8th Dist. Cuyahoga No. 99136, 2013-Ohio-1905, ¶ 13. The decision to conduct a hearing lies within the sound discretion of the trial court, and will not be disturbed absent an abuse of that discretion. *Conner* at ¶ 23, citing *State v. Smith,* 30 Ohio App.3d 138, 139, 506 N.E.2d 1205 (9th Dist.1986).

**{¶29}** In the trial court's January 20, 2017 judgment entry and opinion denying White's motion for a new trial, the court concluded, in relevant part:

> The affidavit in support of [White's] motion is not credible. In the court's view it is a construct between the affiant and [White] tailored to satisfy the

affidavit requirement of Crim.R. 33(A)(6). Based on its determination that the affidavit submitted in support of [White's] motion for a new trial lacks credibility, the court finds that there is no need for an evidentiary hearing.

**{¶30}** In the instant matter, White challenges the trial court's credibility determination regarding Johnson and his affidavit. Specifically, White suggests that Johnson is credible because he and Harris are cousins and Johnson had no reasonable or plausible reason to lie on White's behalf.

**{¶31}** White directs this court to *State v. Beavers*, 166 Ohio App.3d 605, 2006-Ohio-1128, 852 N.E.2d 754 (2d Dist.), in support of his argument that the trial court erred by denying his motion without a hearing. There, the appellate court held that a hearing was necessary to resolve the issues in the defendant's motion for a new trial because (1) the judge who presided over the defendant's trial and postconviction proceedings retired, (2) the motion for a new trial was not ruled on until nearly five years after it had been filed, and (3) the judge who reviewed the defendant's motion for a new trial had no firsthand knowledge of the trial testimony or testimony adduced during postconviction proceedings. *Id*. at ¶ 22.

**{¶32}** The instant matter is readily distinguishable from *Beavers*. White was convicted following a bench trial in 2014. The same judge who presided over the bench trial reviewed and denied White's motion for a new trial. White filed his motion for a new trial in December 2016, and the trial court denied the motion in January 2017.

**{¶33}** The Ohio Supreme Court has identified the following five factors that a trial court should consider in assessing the credibility of the testimony in an affidavit:

(1) whether the judge reviewing the postconviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial.

*Calhoun*, 86 Ohio St.3d at 285, 714 N.E.2d 905. "One or more of the *Calhoun* factors, to the extent that any of them apply, may be sufficient to justify a conclusion that an affidavit asserting information outside the record lacks credibility." *Taylor*, 8th Dist. Cuyahoga No. 88020, 2007-Ohio-825, at ¶ 17.

**{¶34}** In the instant matter, the first, third, and fourth *Calhoun* factors apply. Regarding the first factor, as noted above, the same judge who presided over White's bench trial also reviewed and denied White's motion for a new trial. "'[T]he acumen gained by the trial judge who presided during the entire course of [the] proceedings makes him well qualified to rule on the motion for a new trial on the basis of the affidavit[s] and makes a time consuming hearing unnecessary.'" *State v. Monk*, 5th Dist. Knox No. 03 CA 12, 2003-Ohio-6799, ¶ 20, quoting *United States v. Curry*, 497 F.2d 99, 101 (5th Cir.1974).

> "The trial judge is in a peculiarly advantageous position * * * to pass upon the showing made for a new trial. [The judge] has the benefit of observing the witnesses at the time of the trial, is able to appraise the variable weight to be given to their subsequent affidavits, and can often discern and assay the incidents, the influences, and the motives that prompted the recantation. [The judge] is, therefore, best qualified to determine what credence or consideration should be given to the retraction, and [the judge's] opinion is accordingly entitled to great weight. If the rule were otherwise, the right of new trial would depend on the vagaries and vacillations of witnesses rather than upon a soundly exercised discretion of the trial court."

*Taylor v. Ross*, 150 Ohio St. 448, 452, 83 N.E.2d 222 (1948), quoting *State v. Wynn*, 178 Wash. 287, 34 P.2d 900 (1934).

{¶35} In this case, the reasoning set forth in *Monk*, *Curry*, and *Taylor* is even more applicable because the trial court was also the factfinder. Accordingly, the trial court, who observed the witnesses testifying and, at the close of trial, found White guilty, was in the best position to decide if a hearing on White's motion for a new trial was necessary.

{¶36} Regarding the third *Calhoun* factor, Johnson's affidavit contains hearsay — statements that Harris allegedly made to Johnson after the murder. Regarding the fourth factor, although Johnson is not a relative of White, White acknowledges that he and Johnson are both housed at the Trumbull Correctional Institution where they became acquainted.

{¶37} White suggests that the trial court determined that Johnson was not credible merely because he is a convicted felon: "Johnson's criminal record should not be a disqualifier as to [his] credibility." Appellant's brief at 9. Although the trial court did acknowledge that Johnson is a convicted felon, the court's judgment entry clearly reflects that it did not make its credibility determination on that basis alone. The trial court determined that the substance of Johnson's affidavit lacked credibility. The trial court explained that the statements in Johnson's affidavit were "notably vague" and questioned Johnson's highlighting of White's absence at critical times. Furthermore, the trial court determined that Johnson attempted to exculpate White by using "convenient, non-specific recollection of times, dates and names." For instance, Johnson did not recall the name

of Harris's friend that allegedly went into the victim's house with Harris, but Johnson specified that this individual was not White.

{¶38} Finally, we note that although Harris purportedly conveyed the information to Johnson on the day of, or the day after, the December 22, 2012 murder, Johnson did not disclose this information until executing his affidavit on November 16, 2016 — nearly four years after the murder. Johnson failed to provide any explanation, much less a reasonable explanation, for this delay.

{¶39} For all of the foregoing reasons, we cannot say that the trial court abused its discretion in determining that Johnson's affidavit testimony was not credible and that White's "newly discovered evidence" failed to disclose a strong probability that it would change the result if a new trial were granted. Thus, the trial court did not abuse its discretion by denying White's motion for a new trial without an evidentiary hearing.

{¶40} White's second assignment of error is overruled.

### III. Conclusion

{¶41} After thoroughly reviewing the record, we find that White's "newly discovered evidence" does not meet the *Petro* criteria because it merely impeaches and contradicts the evidence presented at his bench trial and would not change the outcome of the trial if a new trial was granted. Thus, the trial court did not abuse its discretion in denying White's motion without an evidentiary hearing.

{¶42} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., JUDGE

EILEEN T. GALLAGHER, P.J., and
PATRICIA ANN BLACKMON, J., CONCUR